### SOULE v. McKIBBEN.

The 32d section of the Charter of 1855 of the City of San Francisco, was designed as a check upon the city government under that charter, leaving the previous indebtedness to stand as a matter the Legislature could not interfere with.

The limitation fixed by that section upon the amount of indebtedness that could be lawfully incurred by the city, refers only to indebtedness under the charter, not computing the previous debt funded or unfunded.

APPEAL from the District Court of the Fourth Judicial District.

The plaintiff, a tax-payer of the city of San Francisco, filed his bill for an injunction to restrain the defendant, as City Treasurer, from paying any warrant drawn under an Ordinance passed January 17th, 1856, instructing the City Comptroller to draw his warrant on the City Treasurer in favor of R. C. Page, Clerk of the Board of Assistant Aldermen, for the sum of one thousand dollars, for salary as said Clerk.

The grounds taken appear fully in the opinion of the Court. The Court below dissolved the injunction. Plaintiff appealed.

*Blanding and Blanding*, for Appellant.

*Francis Poe*, for Respondent.

The opinion of the Court was delivered by Mr. Chief Justice MURRAY. Mr. Justice TERRY concurred.

The thirty-second section of the charter of San Francisco provides, that "the Common Council shall not make or permit to accrue any debt or liability which in the aggregate, with all the former debts or liabilities, exclusive of the funded debts, shall exceed the sum of $25,000 over and above the annual estimated revenue of the city at the time of incurring such debt or liability."

The question submitted for our consideration is whether the floating debt of the city prior to the passage of the charter, is to be taken into computation in making up the indebtedness, or whether this provision is to be extended to the debts thereafter contracted. At the date of the adoption of this charter, the indebtedness of the city far exceeded the

sum of twenty-five thousand dollars over the estimated annual revenue, so that if it was designed that this section should operate upon passed indebtedness, and was not intended as a rule for the future, the moment the charter became a law, the municipal government ceased to exist, for want of power to contract for necessary expenses.

Much stress is laid on the fact, that the same Legislature passed an Act to fund the indebtedness; and that the design appears to have been to reduce the whole debt of the city to two classes; funded, and the annual debt for ordinary expenses. A sufficient answer to this proposition is, that the Legislature neither can, nor has attempted to compel the holders of scrip to fund it; that it must be a matter of discretion with them whether they will substitute their security for new ones; and it can hardly be supposed that the Legislature intended to leave the welfare of so large and important a city in the hands of rapacious creditors, who by refusing to fund claims to the amount of eight hundred thousand dollars, could block the wheels of government, and practically nullify the act of incorporation.

Our conclusions are, that the thirty-second section was designed as a rule of conduct, as well as a check upon the new government to be installed under the present charter, leaving the previous indebtedness to stand, as a matter with which they could not interfere. The Legislature attempted to provide against extravagance and corruption, by limiting the expenses of the city government to $25,000 more than its actual revenue. Some hypercriticism has been employed upon the words "former debt," etc., used in the section above quoted. Our opinion is, they refer to debts contracted subsequent to the passage of the charter, but previous to the debt or debts, which it is claimed in the aggregate exhaust the power by transcending the limits established by the Act.

Judgment affirmed.