Filed 6/5/17

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| CHERRITY WEATHERFORD, | ) | |
| | ) | |
| Plaintiff and Appellant, | ) | |
| | ) | S219567 |
| v. | ) | |
| | ) | Ct.App. 1/1 A138949 |
| CITY OF SAN RAFAEL et al., | ) | |
| | ) | Marin County |
| Defendants and Respondents. | ) | Super. Ct. No. CIV 1300112 |
| _____ | ) | |

In California, concerns about improper government expenditures can give rise to more than just criticism in the public sphere or complaints to elected officials. Under Code of Civil Procedure section 526a,[1] certain individuals and corporations also have a right to pursue legal actions enjoining wasteful or illegal expenditures by government entities. Whether someone can use this provision to begin a lawsuit depends on whether the person has standing to do so. At issue in this case is whether an individual's standing to sue under section 526a requires the payment of a property tax and — if the payment of a property tax is not required — what types of tax payments satisfy the statute.

What we hold is that section 526a does not require the payment of a property tax. An allegation that the plaintiff has paid an assessed tax to the defendant locality is sufficient under section 526a. Because the superior court and

_____

[1]    All subsequent statutory references are to the Code of Civil Procedure, unless otherwise noted.

SEE CONCURRING OPINIONS.

Court of Appeal held that payment of a property tax was required, we reverse and remand for further proceedings consistent with this opinion.

I.

Plaintiff Cherrity Weatherford resides in the City of San Rafael and the County of Marin. She does not own real property in the city or county, but she lived with her daughter in a rental apartment in San Rafael when she began this lawsuit.[2] On January 9, 2013, Weatherford filed a complaint for declaratory and injunctive relief challenging the manner in which the City of San Rafael and County of Marin enforced Vehicle Code section 14602.6. According to Weatherford, defendants' practice of impounding vehicles without providing adequate notice violates both the state and federal Constitutions. As Weatherford had not been personally subject to this allegedly unconstitutional practice, she averred that she had taxpayer standing under section 526a. According to Weatherford, she had paid sales tax, gasoline tax, water and sewage fees, and "other taxes, charges and fees routinely imposed" in the City of San Rafael and the County of Marin. Her complaint conceded that she had not paid property taxes.

On April 22, 2013, the trial court filed a stipulated order and judgment of dismissal. In the stipulated order, Weatherford cited two prior Court of Appeal opinions that contained language suggesting that section 526a requires a plaintiff to pay property taxes to satisfy the taxpayer standing requirement. (See *Torres v.*

---

[2] After oral argument, Weatherford's attorney informed this court that his client had recently decided to move from Marin County to Washington State. This information has no effect on our analysis of whether section 526a requires the payment of a property tax and — whether or not the case might be thought of as moot in light of this information — we elect to retain it to resolve a potentially recurring question of public importance. (See *People v. Carbajal* (1995) 10 Cal.4th 1114, 1120 fn. 5.) On remand, the superior court may consider what effect, if any, Weatherford's decision has on her ability to continue this lawsuit.

*City of Yorba Linda* (1993) 13 Cal.App.4th 1035; *Cornelius v. Los Angeles County Metropolitan Transportation Authority* (1996) 49 Cal.App.4th 1761 (*Cornelius*).) Weatherford averred that those opinions interpreted section 526a to require the payment of a property tax and, further, that they had rejected her argument that such a requirement is an unconstitutional wealth-based classification. (See, e.g., *Torres*, at p. 1048, fn. 7.) Defendants and the trial court agreed with Weatherford's interpretation of those cases, so the parties stipulated to a judgment of dismissal on the ground that Weatherford could not amend her complaint to cure the defect in standing under existing case law. Weatherford then appealed the stipulated judgment.

The Court of Appeal affirmed the judgment of dismissal. Although it reasoned that some plaintiffs might be able to invoke the statute without paying property taxes, it held that an individual plaintiff must be liable to pay a property tax within the relevant locality — or have paid such a tax during the previous year — in order to have standing.

We granted review to address whether section 526a requires an individual to have paid or to be liable for the payment of property taxes in order to have the necessary standing for a taxpayer action.

II.

A.

Section 526a provides, in relevant part: "An action to obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a county, town, city or city and county of the state, may be maintained against any officer thereof, or any agent, or other person, acting in its behalf, either by a citizen resident therein, or by a corporation, who is assessed for and is liable to pay, or, within one year before the commencement of the action, has paid, a tax therein." At the heart of this case is the question of how

3

to read the phrase "who is assessed for and is liable to pay . . . or, has paid, a tax therein" — a phrase in section 526a that we have not previously construed. To answer it, we must begin by considering the statute's language and structure, bearing in mind that our fundamental task in statutory interpretation is to ascertain and effectuate the law's intended purpose. (See, e.g., *Horwich v. Superior Court* (1999) 21 Cal.4th 272, 276.) We examine the ordinary meaning of the statutory language, the text of related provisions, and the overarching structure of the statutory scheme. (See *Larkin v. Workers' Compensation Appeals Bd.* (2015) 62 Cal.4th 152, 157-158; see also *Poole v. Orange County Fire Authority* (2015) 61 Cal.4th 1378, 1391 (conc. opn. of Cuéllar, J.) ["The statute's structure and its surrounding provisions can reveal the semantic relationships that give more precise meaning to the specific text being interpreted, even if the text may have initially appeared to be unambiguous"]; *Lonicki v. Sutter Health Central* (2008) 43 Cal.4th 201, 209-210.) As this is a question of statutory interpretation, we consider it de novo. (*Imperial Merchant Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 387.)

The Legislature conditioned taxpayer standing under section 526a by using language strongly implying a limitation on the type of tax contemplated by the statute. The statute begins by describing the type of action and relief available under section 526a, before listing the categories of jurisdictions that may be held liable under the statute. (§ 526a [listing cities and counties, among others].) Within that same sentence, section 526a also defines the persons who are eligible to bring suit: a "citizen resident therein" and a corporation that is "assessed" for and liable to pay or has paid a "tax therein." The statutory language itself thus defines two particular classes of taxpayers that may maintain an action under section 526a, and further specifies the type of tax that they must be liable to pay and where they must pay it.

4

To further illuminate the scope and significance of section 526a, we consider its provisions in light of the statute's larger legal context — a context encompassing the evolution of standing in California from its common law roots to its various statutory incarnations. (See, e.g., *Carsten v. Psychology Examining Com. of the Bd. of Medical Quality Assurance* (1980) 27 Cal.3d 793, 798-802 [considering scope of standing in light of prudential and separation of powers concerns]; see generally *Jasmine Networks, Inc. v. Superior Court* (2009) 180 Cal.App.4th 980, 990-993 [comparing history of standing under California and federal law].) At its core, standing concerns a specific party's interest in the outcome of a lawsuit. (See, e.g., *Carsten*, *supra*, 27 Cal.3d at p. 798; *Harman v. City and County of San Francisco* (1972) 7 Cal.3d 150, 159 ["The propriety of a private person's judicial challenge to legislative or executive acts depends upon the fitness of the person to raise an issue ('standing') and the amenability of the issue raised to judicial redress ('justiciability')"].) We therefore require a party to show that he or she is sufficiently interested as a prerequisite to deciding, on the merits, whether a party's challenge to legislative or executive action independently has merit. (See, e.g., § 1086 [standing to seek writ of mandate].) In making this threshold determination, our inquiry differs somewhat from the standing analysis employed in the federal courts. Unlike the federal Constitution, our state Constitution has no case or controversy requirement imposing an independent jurisdictional limitation on our standing doctrine. (See *Grosset v. Wenaas* (2008) 42 Cal.4th 1100, 1117, fn. 13 [noting the absence of a case or controversy requirement in the California constitution].)

Our standing jurisprudence nonetheless reflects a sensitivity to broader prudential and separation of powers considerations elucidating how and when parties should be entitled to seek relief under particular statutes. While a plaintiff is generally required to have a direct and substantial beneficial interest in order to

seek a writ of mandate under section 1086, for example, we have long allowed petitioners to seek relief where " ' "the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty." ' " (*Save the Plastic Bag Coalition v. City of Manhattan Beach* (2011) 52 Cal.4th 155, 166 (*Save the Plastic Bag Coalition*); see also *Bd. of Soc. Welfare v. County of Los Angeles* (1945) 27 Cal.2d 98, 101 [concluding that a party's interest " 'in having the laws executed and the duty in question enforced' " is sufficient even absent a " 'legal or special interest' "].) This exception to the beneficial interest requirement protects citizens' opportunity to "ensure that no governmental body impairs or defeats the purpose of legislation establishing a public right." (*Green v. Obledo* (1981) 29 Cal.3d 126, 144.)

Notwithstanding the arguments for broad "public interest" standing, though, we have continued to recognize the need for limits in light of the larger statutory and policy context. For instance, in *Dix v. Superior Court* (1991) 53 Cal.3d 442, we rejected the petitioner's claim that a private citizen had either a " 'beneficial interest' " or public interest standing to challenge a criminal defendant's resentencing. (*Id.* at p. 451.) Though the petitioner-victim argued that the prosecutor's decisions in the resentencing proceeding implicated a " 'public duty,' " we rejected the invitation to infringe upon a core aspect of prosecutorial discretion. (*Id.* at p. 453.) Even if one might plausibly understand a prosecutor's duties under the law as public, construing public interest standing to authorize such suits would be at odds with both the executive decision making role of prosecutors, as well as the deference we ordinarily afford them. (*Id.* at p. 451 ["The prosecutor ordinarily has sole discretion to determine whom to charge, what charges to file and pursue, and what punishment to seek"]; *see also Manduley v. Superior Court* (2002) 27 Cal.4th 537, 552 [" 'The prosecution's authority in this

regard is founded, among other things, on the principle of separation of powers, and generally is not subject to supervision by the judicial branch.' "].)

Our decision in *Dix* thus illustrates the type of analysis required in determining standing's scope under a statutory right to relief. While this analysis is grounded in the statutory text, the text read in isolation can be insufficient to adequately capture the other prudential and separation of powers considerations that have traditionally informed the outer limits of standing. This sensitivity to the larger context of standing is not only a method to better effectuate the Legislature's purpose in providing certain statutory remedies, but also marks a recognition of the sometimes competing interests at issue when considering whether a party may seek a judicial remedy against government officials.

Section 526a provides a mechanism for controlling illegal, injurious, or wasteful actions by those officials. That mechanism, moreover, remains available even where the injury is insufficient to satisfy general standing requirements under section 367. (See, e.g., *Blair v. Pitchess* (1971) 5 Cal.3d 258, 267-268 (*Blair*) [describing the "primary purpose" of section 526a to be " 'enabl[ing] a large body of the citizenry to challenge governmental action which would otherwise go unchallenged in the courts because of the standing requirement' " ]; see also § 367 ["Every action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute"].) Unlike public interest standing under section 1086, which we have described as a judicially recognized "exception to, rather than repudiation of, the usual requirement of a beneficial interest [under section 1086]," (*Save the Plastic Bag Coalition*, *supra*, 52 Cal.4th at p. 170, fn. 5), section 526a represents a legislative decision to create judicial access for parties that would not otherwise be eligible to seek relief under sections 367 or 1086. Moreover, section 526a makes plaintiffs eligible to seek a range of remedies beyond mandamus. (See, e.g., *Love v. Keays* (1971) 6 Cal.3d 339, 343

7

[declaratory and injunctive relief]; *Stanson v. Mott* (1976) 17 Cal.3d 204, 226-227 [damages]; see also *Van Atta v. Scott* (1980) 27 Cal.3d 424, 448-449 (*Van Atta*), undercut by subsequent change in Cal. Const. as stated in *In re York* (1995) 9 Cal.4th 1133, 1143, fn. 7.)

Yet because the Legislature's enactment of section 526a marked a departure from the common law approach to taxpayer standing, our case law therefore recognizes both the breadth and corresponding limits of who may bring suit pursuant to section 526a. Prior to the 1909 adoption of section 526a, we held that, as a general matter, taxpayers had "such an interest in the proper application of [public] funds" that they could "maintain an action" to enjoin the illegal expenditure of public funds. (*Winn v. Shaw* (1891) 87 Cal. 631, 636; see also *Soule v. McKibben* (1856) 6 Cal. 142, 142 [describing plaintiff as a "tax payer" of the city in an action to enjoin public payment to a city clerk].) As we explained in *Irwin v. City of Manhattan Beach* (1966) 65 Cal.2d 13 (*Irwin*), the language of section 526a explicitly indicates the Legislature's intent to "limit the right to sue in this kind of case, for it clearly altered the common law, which required only that the plaintiff be a taxpayer supporting the governmental entity whose act is sought to be challenged" and did not impose a residency requirement. (*Id*. at p. 19, citing *Thomas v. Joplin* (1910) 14 Cal.App. 662, 664-665.) Section 526a's requirement that an individual plaintiff be a "citizen resident therein," thus narrowed the scope of taxpayer standing relative to the common law.

Notwithstanding the Legislature's apparent objective in enacting section 526a, in *Irwin* we had no choice but to conclude that section 526a's residency requirement was unconstitutional as applied to a nonresident property owner. *Irwin* concerned a comparison between two persons — but only one was a natural as opposed to a corporate person. The *Irwin* plaintiff was a nonresident who paid assessed property taxes for property within the city she sought to sue, but the plain

8

language of section 526a's residency requirement denied her standing to sue. (*Irwin*, *supra*, 65 Cal.2d at pp. 16, 19.) In contrast, a similarly situated nonresident corporate real property owner would have standing to sue under section 526a. (*Irwin*, at p. 19.) Under those circumstances, we concluded that the Legislature's attempt to limit standing to residents of the relevant locality ran afoul of the federal equal protection clause. (*Id*. at pp. 19-20.)

But our conclusion in *Irwin* addressed a specific constitutional question, and did not reforge section 526a into a statute granting unfettered standing. Notwithstanding our holding in *Irwin*, our initial observation that section 526a represented a legislative effort to codify a more limited version of the common law right remained valid. We therefore understand section 526a not only as a means for certain people to pursue an action enjoining some expenditures of public funds even when those people have not been injured, but also as a measure narrowing the category of taxpayers that are eligible to commence such actions relative to what the common law allowed.

B.

Section 526a does narrow the category of taxpayers able to sue to enjoin certain expenditures of governmental funds. But the Court of Appeal traveled a step too far when it held that the statute requires individual plaintiffs to pay a property tax. Although we need not delineate the precise outer limits of the statute's operation, we can conclude with confidence that limiting its application to property taxpayers reflects an unduly constrained view of the statute's requirements. To begin, nothing in the statute's language suggests such a cramped conception of taxpayer standing. It is no doubt true that the statute's conception of an "assessed" tax encompasses property taxes. (See *Cornelius*, *supra*, 49 Cal.App.4th at p. 1775.) Yet the conclusion that property taxes satisfy the statute's requirement for standing does not suggest that only such taxes suffice.

9

As a matter of statutory drafting, the Legislature could easily have written the statute to restrict standing only to those who pay property taxes. That no such limitation appears in the statute is a strong indication that the statute's invocation of an "assessed" tax is a general description, not a proxy for the term "property tax."

Nor would it be at all consistent with the statute's "primary purpose" to hold that payment of a property tax is required. (See *Blair*, *supra*, 5 Cal.3d at p. 267.) We have previously described this purpose as " 'enabl[ing] a large body of the citizenry to challenge governmental action which would otherwise go unchallenged in the courts because of the standing requirement.' " (*Id.* at pp. 267-268.) In light of this purpose, it is crucial that the statute provide a "broad basis of relief." (*Van Atta*, *supra*, 27 Cal.3d at p. 450.) Accordingly, we have always construed section 526a liberally — though not in a manner inconsistent with the explicit statutory limits it imposes on taxpayer standing — in light of its remedial purpose. (*Van Atta*, 27 Cal.3d at pp. 447-448 [discussing *Blair*, *supra*, 5 Cal.3d at pp. 267-278 and *White v. Davis* (1975) 13 Cal.3d 757, 763].) Limiting individual plaintiffs' use of the statute to those who pay property taxes is simply incompatible with the recognized need to construe the statute broadly. The Court of Appeal erred in holding to the contrary.[3]

But because section 526a does not confer unrestricted standing to taxpayers, the question remains: Which taxes are sufficient to establish standing under the statute? The statute allows for suit against governmental entities "either by a citizen resident therein, or by a corporation, who is assessed for and is liable

---

[3] Because we hold that, as a matter of statutory interpretation, the payment of property taxes is not required under section 526a, we need not reach Weatherford's argument that construing the statute to apply only to property owners violates equal protection.

10

to pay, or, within one year before the commencement of the action, has paid, a tax therein." The parties' principal dispute centers on the term "therein," which can conceivably mean either "in" or "into." (Merriam-Webster's Collegiate Dict. (11th ed. 2004) at p. 1296.) Weatherford argues that all forms of taxes assessed by state and local governments qualify so long as the plaintiff resides *in* the defendant locality. Defendants, by contrast, argue that a plaintiff must be "assessed for and liable to pay" a tax which the defendant imposes directly onto the plaintiff, and thus that the plaintiff pays directly *into* the defendant. In developing their theories, the parties cite various state and local taxes that each side contends either do or do not satisfy each side's respective criteria.

Our ability to consider these theories fully, however, is limited by this case's procedural posture. At the trial court, the parties entered into a stipulated judgment of dismissal under *Norgart v. Upjohn Company* (1999) 21 Cal.4th 383. In *Norgart*, we approved a procedure whereby the parties agree to a stipulated judgment solely for purposes of facilitating the appeal of a controlling legal question. (*Id.* at p. 401.) Here, the parties and trial court read *Torres* and *Cornelius* as foreclosing Weatherford's argument that payment of property taxes is not required under section 526a. But because the parties consented to dismissal before any factual development, basic factual questions — including *which taxes the defendants actually impose* — are unresolved. Such information about local governments' tax structures might shed some light on the consequences of a requirement that taxes be directly assessed against a plaintiff. (See *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 ["[C]onsideration should be given to the consequences that will flow from a particular interpretation" of a statute.].)

In light of these limitations, we conclude that it is sufficient for a plaintiff to allege she or he has paid, or is liable to pay, to the defendant locality a tax

11

assessed on the plaintiff by the defendant locality. Such an allegation satisfies the more stringent version of the requirement that a tax be paid "therein," and is consistent with prior holdings recognizing taxpayer standing under section 526a. (See *Irwin*, *supra*, 65 Cal.2d at pp. 18-20; *Blair*, *supra*, 5 Cal.3d at pp. 268-269, 285.) An allegation of direct tax payment to the defendant locality also does not implicate the competing interests underlying our approach to standing. In sum, we can be certain that the Legislature's purpose, at a minimum, was for the statute to apply where plaintiffs are directly taxed by the defendant locality.

Here, Weatherford alleged in her complaint that she has paid "in and to the City of San Rafael, County of Marin, and State of California" taxes "routinely imposed by municipalities, counties and the state[]." But as the parties stipulated to judgment for the purpose of challenging the decisions in *Cornelius* and *Torres*, the record is devoid of information regarding which taxes defendants actually impose, or whether Weatherford has, in fact, paid any assessed taxes to San Rafael or Marin County. Under these circumstances, we cannot determine whether the general statements in Weatherford's complaint satisfy the above standard. So we remand to the Court of Appeal with directions to reverse the stipulated judgment and remand to the superior court for further proceedings consistent with this opinion.

12

III.

The Court of Appeal erred when it held that payment of a property tax was required under section 526a. The statute's text, context, and broad remedial purposes preclude such an interpretation. But this case's procedural posture limits our ability to fully consider the parties' other contention about taxpayer standing. We therefore reverse the decision of the Court of Appeal and remand with instructions that the Court of Appeal reverse the stipulated judgment and remand to the superior court for further proceedings consistent with our opinion.

**CUÉLLAR, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**WERDEGAR, J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**

13

**CONCURRING OPINION BY CANTIL-SAKAUYE, C. J.**

I concur in the court's decision that the payment of a property tax is not the sole basis, under Code of Civil Procedure section 526a,[1] to confer standing on a party in order to pursue a taxpayer action. I write separately to urge the Legislature to revisit section 526a and amend the statute in a manner that makes clear what kinds of taxes are sufficient to establish standing to sue a particular government entity for alleged wasteful or illegal expenditures.

The provision of section 526a at issue in this matter reads: "An action to obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a county, town, city or city and county of the state, may be maintained against any officer thereof, or any agent, or other person, acting in its behalf, either by *a citizen resident therein, or by a corporation, who is assessed for and is liable to pay, or, within one year before the commencement of the action, has paid, a tax therein*." (Italics added.)

In this single sentence are 87 words parsed by 19 commas. It is not a model of clarity. As this court today acknowledges, the parties dispute the meaning of the italicized language, especially the meaning of the word "therein." As the majority notes, the second word "therein" could mean either "in" or "into." (Maj. opn., *ante*, at p. 11.) Defendants, the City of San Rafael and the County of Marin,

---

[1] All further statutory citations are to the Code of Civil Procedure.

contend the word "therein" in section 526a means "into," which would require payment of a tax "into" the coffers of a city or county, signifying that Weatherford has standing to sue only if she has paid a tax directly *into* their coffers. Weatherford contends the word "therein" simply means "in," and that, therefore, she need show only that she paid any kind of tax while she resided *in* the defendant localities. Amici also contend that the statute's commas mean that only unpaid taxes for which an individual is liable must be "assessed"; on this view, Weatherford need not prove she paid a tax directly assessed on her so long as she can prove she paid a qualifying tax in the past.

This sentence in section 526a was drafted and enacted by the Legislature in 1909. (Stats. 1909, ch. 348, p. 578.) In the 108 years since, it has not been amended. Yet the system of state and local taxation in California has changed dramatically over the last century.

Numerous new taxes have been imposed by state and local governmental entities since 1909. For example, in 1923, the state first enacted the "Gasoline Tax Act" to help defray the costs of maintaining state and local roads and highways. (Stats. 1923, ch. 267, p. 571; *Oswald v. Johnson* (1930) 210 Cal. 321, 322 [citing 1925 amendments]; *People v. Ventura Refining Co.* (1928) 204 Cal. 286, 287.) The state enacted the Retail Sales Tax Act of 1933 in that year (Stats. 1933, ch. 1020, § 1, p. 2599; *National Ice & Cold Storage Co. v. Pacific Fruit Express Co.* (1938) 11 Cal.2d 283, 285.) The Legislature adopted a state system of income tax in 1935. (Stats. 1935, ch. 329, p. 1090; *Weekes v. Oakland* (1978) 21 Cal.3d 386, 403.) That same year, the state enacted the Motor Vehicle License Fee Act, which distributed money collected from motorists to the state's general fund as well as to cities and counties. (Stats. 1935, ch. 362, p. 1312; *Ingels v. Riley* (1936) 5 Cal.2d 154, 158.) In 1950, this court endorsed the ability of cities to impose business license taxes. (*Martin Ship Service Co. v. Los Angeles*

2

(1950) 34 Cal.2d 793.)  In 1955, the state enacted a uniform local sales and use tax system and permitted counties to adopt such taxes.  (Stats. 1955, ch. 1311, p. 2381; *Geiger v. Board of Supervisors* (1957) 48 Cal.2d 832, 834.)  In 1971, this court endorsed the ability of cities to impose utility users' taxes on providers of telephone and energy services.  (*Rivera v. Fresno* (1971) 6 Cal.3d 132.)  In 1976, the Legislature enacted the Emergency Telephone Users Surcharge Act to fund state and local agencies' costs associated with providing and administering 911 emergency services.  (Stats. 1976, ch. 443, p. 1155; *Bay Area Cellular Telephone Co. v. City of Union City* (2008) 162 Cal.App.4th 686, 699.)

Following the enactment of section 526a in 1909, the methods by which these taxes are assessed, collected, and distributed by state and local government entities have become increasingly complex.  For example, even if a local government entity enacts a local sales tax, such taxes are collected by a state entity, the State Board of Equalization, which then remits the revenues to the local entity.  (*City of Palmdale v. Board of Equalization* (2012) 206 Cal.App.4th 329, 332.)  In 1978, Proposition 13, and its implementing legislation enacted in 1979, transferred control over the imposition and allocation of property tax revenue from individual localities to a state-mandated formula that directed counties to permanently fix the tax rate for all real property statewide at 1 percent of assessed value and directed how the counties could allocate that revenue among local governmental entities, as determined by the Legislature.  (*City of Scotts Valley v. County of Santa Cruz* (2011) 201 Cal.App.4th 1, 8-9, 49.)  In *City of Alhambra v. County of Los Angeles* (2012) 55 Cal.4th 707, we addressed an administrative cost dispute arising out of the complex tax-shifting measures created by the enactments of the "Triple Flip" and "Vehicle License Fee Swap," which diverted some local sales, use, and property taxes to fund state obligations and provided compensation

3

to local government entities for reduced revenues created by a state-mandated lowering of vehicle license fees.  (*Id*. at pp. 715-716.)

These complex systems of government financing highlight the need for clarity regarding the meaning of section 526a.  Even if defendants' interpretation of the word "therein" is correct, these complications concerning how government agencies impose and collect various taxes and how they are ultimately distributed to fund local government entities further cloud the parameters of taxpayer standing under section 526a.  This in turn leads to questions such as whether a resident like Weatherford, who pays an otherwise locally imposed tax, is really paying that tax directly *into* that local government entity, even though the tax is actually imposed or collected by another agency or is diverted for purposes unrelated to that local government.

In order for a law to have its full intended effects and benefits, it should be framed to reflect circumstances as they exist now.  If "the primary purpose of section 526a was to give a large body of citizens standing to challenge governmental actions" (*Blair v. Pitchess* (1971) 5 Cal.3d 258, 269), the statute's lack of clarity would seem to thwart that very purpose.  The archaic language of section 526a has not evolved alongside the increasing complexities concerning how residents are taxed and how those proceeds fund local government entities.  Accordingly, I encourage the Legislature to revisit section 526a in order to clarify the criteria necessary to confer taxpayer standing.


CANTIL-SAKAUYE, C. J.

I CONCUR:

LIU, J.

4

**CONCURRING OPINION BY KRUGER, J.**


I agree that taxpayer standing under Code of Civil Procedure section 526a (section 526a) is not limited to plaintiffs who have paid property taxes in the relevant jurisdiction. Indeed, the parties before us appear to agree on this point: Defendant localities acknowledge that, even as they read section 526a, it confers standing on at least some plaintiffs who pay taxes other than property taxes — for example, hotel guests who pay local taxes on the cost of room rental. (Cf. *In re Transient Occupancy Tax Cases* (2016) 2 Cal.5th 131, 133.) The stipulated judgment in this case, however, rests on the premise that payment of property taxes was required. And other than a conclusory allegation that plaintiff Cherrity Weatherford paid taxes "routinely imposed by municipalities, counties and the state," the record contains no information about what other kinds of taxes, precisely, Weatherford might have paid. We therefore must send the case back for further consideration of her standing to bring this challenge to defendants' impoundment practices.

I write separately, however, to call attention to a question that today's decision does not resolve. Defendants argue that the "plain language" of section 526a requires proof that the plaintiff has paid a tax assessed directly against her, and, further, that the tax must be assessed by the defendant localities, rather than by state authorities. The ultimate conclusion may or may not be correct, but the

notion that the statute "plainly" imposes a direct-assessment requirement certainly is not.

Section 526a provides that a taxpayer action may be maintained against a local government entity "by a citizen resident therein . . . who is assessed for and is liable to pay, or, within one year before the commencement of the action, has paid, a tax therein." As the Chief Justice notes, this century-old provision is not a "model of clarity." (Conc. opn. of Cantil-Sakauye, C. J., *ante*, at p. 1.) It is certainly possible to read the statute, as defendants do, to confer standing on "two classes of persons who have been assessed for taxes: (1) those who are liable to pay an assessed tax but who have not yet paid, and (2) those who paid an assessed tax within one year before the filing of the lawsuit." But as a grammatical matter, it is equally possible to read the statute to confer standing on any "citizen resident" (1) who is assessed for and is liable to pay a tax therein, or (2) who, within one year before the commencement of the action, has paid, a tax therein.[1] The first interpretation would eliminate the possibility of standing based on, for example, payment of local sales taxes, which are assessed on retailers, although almost invariably passed through in full to consumers. (See Civ. Code, § 1656.1, subd. (a)

---

[1] To illustrate the point, imagine the Legislature had numbered the clauses and inserted line breaks as follows:

> "An action . . . may be maintained . . . by a citizen resident therein . . . who
> "[1] is assessed for and is liable to pay, or,
> "[2] within one year before the commencement of the action, has paid,
> a tax therein."

Defendants' proposed reading of the statute, by contrast, would place the imaginary clause numbers and line breaks as follows:

> "An action . . . may be maintained . . . by a citizen resident therein . . . who is assessed for and
> "[1] is liable to pay, or,
> "[2] within one year before the commencement of the action, has paid,
> a tax therein."

[establishing a presumption that a customer agrees to "reimburse[]" the retailer for the sales tax if, among other possibilities, the amount of the tax is shown on the customer's receipt]; *Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1108-1109.) The second interpretation would confer taxpayer standing based on past payment of such taxes, but not based on future liability to pay.

Today's decision, focused as it is on the narrow issue before us, does not address this fundamental interpretive question. Nor does it address the further question whether the statute's reference to the payment of taxes "therein" should be understood in a fiscal sense (did the taxpayer pay the taxes directly to the defendant jurisdiction?) or a geographic one (was the taxpayer physically located in the jurisdiction when she paid state or local taxes?). (See maj. opn., *ante*, at pp. 10-11.) The answers to these broader questions must lie in broader considerations of the history and purposes of section 526a — a statute designed to give certain persons who have contributed to governmental coffers the ability to challenge governmental expenditures that " 'would otherwise go unchallenged.' " (*Blair v. Pitchess* (1971) 5 Cal.3d 258, 267-268; see *Mays v. City of Los Angeles* (2008) 43 Cal.4th 313, 321 [when interpreting ambiguous statutory text, California courts " ' "may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history" ' "].) The words of the statute, considered in isolation, provide no clear instruction.

With these observations, I join the court's opinion.

**KRUGER, J.**

**I CONCUR:**

**LIU, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Weatherford v. City of San Rafael

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 226 Cal.App.4th 460
**Rehearing Granted**

_____

**Opinion No.** S219567
**Date Filed:** June 5, 2017

_____

**Court:** Superior
**County:** Marin
**Judge:** Roy O. Chernus

_____

**Counsel:**

Mark T. Clausen for Plaintiff and Appellant.

Alan L. Schlosser; Richard A. Rothschild; Barbara A. Jones; Arnold & Porter and Steven L. Mayer for American Civil Liberties Union of Northern California, Western Center on Law and Poverty, Legal Aid Association of California and AARP as Amici Curiae on behalf of Plaintiff and Appellant.

Bertrand, Fox & Elliot, Bertrand, Fox Elliot, Osman & Wenzel, Thomas F. Bertrand and Richard W. Osman for Defendant and Respondent City of Rafael.

Steven M. Woodside, County Counsel, Renee Giacomini Brewer, Valerie R. Boughey and Ellen Obstler, Deputy County Counsel, for Defendant and Respondent County of Marin.

Burke, Williams & Sorensen, Thomas B. Brown and Matthew D. Visick for League of California Cities, California State Association of Counties and California Special Districts Association as Amici Curiae on behalf of Defendants and Respondents.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Mark T. Clausen
100 Sage Street, Building C, Apt. 111
Davis, CA 95616
(707) 235-3663

Steven L. Mayer
Arnold & Porter
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
(415) 471-3100

Richard W. Osman
Bertrand, Fox Elliot, Osman & Wenzel
The Waterfront Building
2749 Hyde Street
San Francisco, CA 94109
(415) 353-0999

Renee Giacomini Brewer
Deputy County Counsel
3501 Civic Center Drive, Suite 275
San Rafael, CA 94903
(415) 473-6117