HUFFMAN, Acting P.J.
*189 *97 Richard L. LaDuke appeals a judgment following his jury conviction of arson ( Pen. Code,[1] § 451, subd. (d) ), vandalism of a religious educational institution (§ 594.3, subd. (a) ), and felony vandalism causing over $400 in damage (§ 594, subds. (a), (b)(1) ). At sentencing, the trial court granted him three years of formal probation, subject to certain conditions of probation. On appeal, he contends: (1) there is insufficient evidence to support his conviction for vandalism of a religious educational institution (§ 594.3, subd. (a) ); (2) that conviction must be reversed because section 594.3, subdivision (a) is unconstitutional under the United States and California Constitutions; (3) his conviction for felony vandalism causing over $400 in damage (§ 594, subds. (a), (b)(1) ) must be reversed because it is a necessarily included offense of vandalism of a religious educational institution (§ 594.3, subd. (a) ); and (4) the electronics search condition of his probation is unconstitutionally overbroad. Because, as discussed post , we conclude the electronics search probation condition is unreasonable in this case, we modify the probation order to strike that condition and affirm the judgment in all other respects.
*98 FACTUAL AND PROCEDURAL BACKGROUND
At about 9:45 a.m. on January 15, 2017, LaDuke squirted lighter fluid on a sign in front of John Paul the Great Catholic University (University) in Escondido and then lit the sign on fire. After about 30 seconds, LaDuke sprayed the sign with lighter fluid again and relit the sign on fire. The sign was made of aluminum and plastic and was mounted on a red brick base, and each side of the sign had an image of the crucifix and the words, "John Paul the Great Catholic University." LaDuke burned both sides of the sign and left after about five minutes. The sign was charred with black burn marks.
A police officer stopped LaDuke a few blocks away. LaDuke had a lighter in his front right pocket. An eyewitness identified him as the person who lit the sign on fire.
The University is a nonprofit educational institution with about 300 students enrolled in theology, creative arts, and business programs. It was founded and is based on the Catholic faith. One-third of its students major in theology and all students are required to take theology or religious philosophy classes. Most of its students are Catholic. Students are encouraged to attend mass services, which are held on campus daily. The University paid $12,000 to replace the damaged sign.
An information charged LaDuke with arson ( § 451, subd. (d) ), vandalism of a building owned and occupied by a religious educational institution (§ 594.3, subd. (a) ), and vandalism causing damage in excess of $400 and also in excess of $10,000 (§ 594, subds. (a), (b)(1) ). At trial, the prosecution presented evidence substantially as described ante . In his defense, LaDuke testified that he was 63 years old, unemployed, and homeless. He stated that he was upset that "the Jews are always blamed for the crucifixion of Jesus" and decided to relieve himself of the burden of being "blamed for crucifying Christ." He admitted he bought a lighter and "some barbecue things" (e.g., lighter fluid), poured lighter fluid all over the University's sign, and lit the sign on fire. On cross-examination, LaDuke admitted he knew the sign had the name, "John Paul the Great Catholic University," on it. He knew the University was a Catholic *190 university. He also saw that the sign had a cross on it, symbolizing Christ on the cross. He knew burning the sign was wrong, but he did not care. He stated a priest at the University refused to talk to him. He did not consider the University a religious organization. He asserted that Catholicism was a "group of teachings" with which he did not agree.
The jury convicted him on all three counts and found the damage on count three (§ 594, subds. (a), (b)(1) ) was over $400, but less than $10,000. At sentencing, the trial court suspended imposition of sentence and granted *99 LaDuke three years of formal probation, subject to certain conditions. One probation condition required that he consent to warrantless searches of "personal effects, computers, and recordable media." LaDuke timely filed a notice of appeal.
DISCUSSION
I
Substantial Evidence to Support LaDuke's Section 594.3, Subdivision (a) Conviction
LaDuke contends there is insufficient evidence to support his section 594.3, subdivision (a) conviction of vandalism of a building owned and occupied by a religious educational institution. In particular, he argues that the sign was not a "building," or part of a building, owned and occupied by a religious educational institution within the meaning of section 594.3, subdivision (a).
A
Following the close of evidence at trial, LaDuke made a section 1118.1 motion to dismiss the section 594.3, subdivision (a) charge against him. He argued that the statute protected only "buildings" and the sign was not attached to, or any part of, any building. The court concluded that the Legislature intended the statute to apply to both personal property and real property. It also noted that there would be no need for the sign unless there was a building it needed to identify. It also stated that burning the sign was more egregious than burning a part of the building because the sign featured a cross and the word "Catholic." The court denied the section 1118.1 motion.
B
When a conviction is challenged on appeal for insufficient evidence to support it, we apply the substantial evidence standard of review. ( People v. Vines (2011) 51 Cal.4th 830, 869, 124 Cal.Rptr.3d 830, 251 P.3d 943 ; People v. Johnson (1980) 26 Cal.3d 557, 578, 162 Cal.Rptr. 431, 606 P.2d 738.) In so doing, we review the whole record in the light most favorable to the judgment to determine whether there is substantial evidence to support the conviction. ( Vines , at p. 869, 124 Cal.Rptr.3d 830, 251 P.3d 943 ; Johnson , at p. 578, 162 Cal.Rptr. 431, 606 P.2d 738.) Substantial evidence is evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. ( People v. Killebrew (2002) 103 Cal.App.4th 644, 660, 126 Cal.Rptr.2d 876.)
*100 In contrast, in reviewing a trial court's interpretation of a statute, we apply a de novo, or independent, standard of review. ( People ex rel. Lockyer v. Shamrock Foods Co. (2000) 24 Cal.4th 415, 432, 101 Cal.Rptr.2d 200, 11 P.3d 956.) In independently interpreting a statute, our task is to ascertain and effectuate the law's intended purpose. ( Weatherford v. City of San Rafael (2017) 2 Cal.5th 1241, 1246, 218 Cal.Rptr.3d 394, 395 P.3d 274.) In interpreting a statute, we look first to the *191 statute's words. ( Delaney v. Superior Court (1990) 50 Cal.3d 785, 798, 268 Cal.Rptr. 753, 789 P.2d 934.) The statutory language is generally the most reliable indicator of legislative intent. ( People v. Cordell (2011) 195 Cal.App.4th 1564, 1575, 126 Cal.Rptr.3d 148 ; Whaley v. Sony Computer Entertainment America,Inc. (2004) 121 Cal.App.4th 479, 484-485, 17 Cal.Rptr.3d 88.) If the statutory language is unambiguous, we will presume the Legislature meant what it said and the plain meaning of the statute will prevail unless its literal meaning would result in absurd consequences that the Legislature did not intend. ( Cordell , at p. 1575, 126 Cal.Rptr.3d 148 ; Whaley , at pp. 484-485, 17 Cal.Rptr.3d 88 ; Riverside County Sheriff's Dept. v. Stiglitz (2014) 60 Cal.4th 624, 630, 181 Cal.Rptr.3d 1, 339 P.3d 295.)
However, if the statutory language is ambiguous and is reasonably susceptible to more than one meaning, we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part. ( DiCampli-Mintz v. County of Santa Clara (2012) 55 Cal.4th 983, 992, 150 Cal.Rptr.3d 111, 289 P.3d 884 ( DiCampli-Mintz ).) Our ultimate objective in interpreting a statute is to construe the statute in a way that most closely comports with the apparent intent of the Legislature. ( People v. Rubalcava (2000) 23 Cal.4th 322, 328, 96 Cal.Rptr.2d 735, 1 P.3d 52.)
C
LaDuke argues there is insufficient evidence to support his section 594.3, subdivision (a) conviction because the sign was not a "building" within the meaning of that statute. Section 594.3, subdivision (a) provides:
"Any person who knowingly commits any act of vandalism to a church, synagogue, mosque, temple, building owned and occupied by a religious educational institution , or other place primarily used as a place of worship where religious services are regularly conducted or a cemetery is guilty of a crime punishable by imprisonment in a county jail for not exceeding one year or imprisonment pursuant to subdivision (h) of Section 1170." (Italics added.)
Section 594.3 does not define the term "building," nor is that term defined elsewhere in the Penal Code in the context of vandalism. The parties have not cited, and we are unaware of, any published case interpreting the phrase "building owned and occupied by a religious educational institution" within *101 the meaning of section 594.3, subdivision (a). Accordingly, the question of the meaning of that phrase appears to be one of first impression.
LaDuke argues the term "building," as used in section 594.3, subdivision (a), necessarily refers to a structure that can be owned and occupied. He cites People v. Muszynski (2002) 100 Cal.App.4th 672, 122 Cal.Rptr.2d 764, in which the court concluded the term "building" was ambiguous in the context of the offense of arson and was reasonably susceptible to multiple interpretations. ( Id . at p. 683, 122 Cal.Rptr.2d 764.) After reviewing the legislative history of the arson statute, the court interpreted the term "building" as not including an individual apartment within an apartment complex. ( Id . at pp. 681, 683, 122 Cal.Rptr.2d 764.) LaDuke also notes that the term "building" has been interpreted in the context of burglary as a structure with four walls and a roof and includes carports and other structures that are attached to, and an integral part of, the building. (See, e.g., People v. Gibbons (1928) 206 Cal. 112, 114, 273 P. 32 ;
*192 People v. Chavez (2012) 205 Cal.App.4th 1274, 1279, 140 Cal.Rptr.3d 860 ; In re Christopher J. (1980) 102 Cal.App.3d 76, 78-79, 162 Cal.Rptr. 147.) Relying on those arson and burglary cases, LaDuke argues that the term "building," as used in section 594.3, subdivision (a), should be interpreted as a structure with four walls and a roof that can be occupied and therefore the term "building" would not include a stand-alone sign such as the one in this case.
In contrast, the People argue the term "building" should be interpreted broadly to achieve the legislative objectives of section 594.3, subdivision (a). Citing various dictionary definitions of the term "building," the People argue that we should interpret that term, as used in section 594.3, subdivision (a), to include anything that is built or constructed (e.g., a structure).[2] Citing Civil Code section 660,[3] the People further argue the term "building" should include fixtures (e.g., things that permanently rest upon or are permanently attached or affixed to land). Because the University's sign was a structure that was permanently affixed to its land, the People argue that sign should be included within the term "building," as used in section 594.3, subdivision (a). The People also argue that by enacting section 594.3, subdivision (a), the Legislature intended to protect the rights of individuals to freely exercise their religious beliefs without the fear of vandalism of the places at which they exercise those beliefs.
*102 Considering the parties' arguments and the language of section 594.3, subdivision (a), we conclude the phrase "building owned and occupied by a religious educational institution," as used in that statute, is reasonably susceptible to more than one meaning. One reasonable narrow interpretation of the term "building" is, as LaDuke argues, a structure that has four walls and a roof and is occupied. In contrast, a reasonable broad interpretation of the term "building" is, as the People argue, any structure or thing built, including any fixtures attached thereto. Given more than one reasonable interpretation of the statutory language of section 594.3, subdivision (a), we must construe that ambiguous language by determining its legislative intent, and, in so doing, we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, construction, and the statutory scheme of which the statute is a part. ( DiCampli-Mintz , supra , 55 Cal.4th at p. 992, 150 Cal.Rptr.3d 111, 289 P.3d 884.)
In construing the language of section 594.3, subdivision (a), we consider, inter alia, the statutory scheme of which that statute is a part. ( DiCampli-Mintz , supra , 55 Cal.4th at p. 992, 150 Cal.Rptr.3d 111, 289 P.3d 884.) In particular, we note that the statute uses the term "vandalism," which is defined in section 594 as the malicious act of defacing, damaging, or destroying "any real or personal property" not his or her own. Therefore, "vandalism," as used in both sections 594 and 594.3, subdivision (a), necessarily includes malicious damage to either real or personal property. Because the vandalism *193 set forth in section 594.3, subdivision (a) prohibits damage to both real and personal property, we reject LaDuke's suggested interpretation limiting that offense to damage to only an occupied structure with four walls and a roof. Instead, the statute's use of the term "vandalism" indicates the Legislature intended to prohibit malicious acts causing damage not only to the physical structure of a building, but also to personal property located within that building or on the same real property as, and related to, the building. Accordingly, we construe section 594.3, subdivision (a) as prohibiting, inter alia, malicious damage to personal property or fixtures located on or attached to the real property of, and related to, a "building owned and occupied by a religious educational institution." (§ 594.3, subd. (a).)
The People note that the Legislature amended section 594.3 in 1983 to add subdivision (b),[4] which subdivision defines the separate, but related, "hate crime" offense of vandalism of religious property and, in so doing, the *103 Legislature stated that the amendment was in response to an "alarming increase in the number of incidents involving acts of vandalism to religious institutions," which acts were often done to intimidate and deter individuals "from freely exercising their religious beliefs." (Stats. 1983, ch. 726, § 2(a), (b).) Although that amendment involved a different subdivision and different offense, we believe it is reasonable to presume the Legislature held the same concerns when originally enacting section 594.3, subdivision (a) two years earlier. Therefore, the Legislature's expressed concerns in 1983 are instructive in interpreting section 594.3, subdivision (a), which was enacted in 1981. (Stats. 1981, ch. 211, § 2.) In particular, we infer that in enacting that statute, the Legislature sought to protect the rights of persons to freely exercise their religious beliefs by making it a criminal offense to vandalize certain religious properties, including buildings owned and occupied by religious educational institutions. To further that legislative purpose, we presume the Legislature intended to prohibit malicious damage not only to the actual physical structures within which religious or religious educational activities are conducted, but also to personal property or fixtures located on or attached to the real property of, and related to, that structure or "building owned and occupied by a religious educational institution." (§ 594.3, subd. (a).)
Based on our interpretation ante of section 594.3, subdivision (a), we conclude the University's sign, which was located in front of, on the same real property as, and related to, the physical structure within which its educational activities are conducted, was either personal property or a fixture located on or attached to the real property of, and related to, that structure and therefore could reasonably be found by the jury to be part of the "building owned and occupied" by the University within the meaning of that statute. The instant sign, made of aluminum and plastic, was built by a contractor who installed it on a red brick base on the University's real property. The sign had an image of the crucifix and the words, "John Paul the Great Catholic University," identifying the *194 physical structure behind it as part of the University and also identifying the University as a religious educational institution. Whether considered personal property or a fixture, the jury could therefore reasonably conclude from the evidence at trial that the sign was part of the building owned and occupied by the University, which is a religious educational institution.[5] Accordingly, we conclude there is substantial evidence to support LaDuke's conviction of the section 594.3, subdivision (a) offense. *104 II-IV**
DISPOSITION
The language setting forth the electronics search condition in No. 6(n) of the probation order (i.e., "computers, and recordable media") is stricken from that order. In all other respects, the judgment of conviction is affirmed. The superior court is directed to amend the probation order accordingly.
WE CONCUR:
NARES, J.
AARON, J.

All statutory references are to the Penal Code except as otherwise specified.

For example, the People cite one dictionary's definition of the term "building" as meaning "a thing built." (Webster's 3d New Internat. Dict. (2002) p. 292.) Likewise, they cite another definition of the term "building" as meaning "anything built or constructed." (Random House Unabridged Dict. (2d ed. 1993) p. 274.)

Civil Code section 660 provides: "A thing is deemed to be affixed to land when it is attached to it by roots ...; or imbedded in it, as in the case of walls; or permanently resting upon it, as in the case of buildings; or permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts, or screws ...."

Section 594.3, subdivision (b) provides: "Any person who knowingly commits any act of vandalism to a church, synagogue, mosque, temple, building owned and occupied by a religious educational institution, or other place primarily used as a place of worship where religious services are regularly conducted or a cemetery, which is shown to have been a hate crime and to have been committed for the purpose of intimidating and deterring persons from freely exercising their religious beliefs, is guilty of a felony punishable by imprisonment pursuant to subdivision (h) of Section 1170."

We note that certain photographs of the sign (Exhibit Nos. 1-6) were admitted in evidence and viewed by the jury, which photographs presumably showed the sign's location adjacent to and in front of the University's structure in which its educational activities were conducted. However, neither party lodged those exhibits with, or requested their transfer to, this court, and therefore we have not reviewed them in disposing of this appeal.

See footnote *, ante .