Filed 6/14/22  Sutter's Place v. Cal. Gambling Control Com. CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| SUTTER'S PLACE, INC.,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>CALIFORNIA GAMBLING CONTROL COMMISSION,<br><br>        Defendant and Respondent. | A163287<br><br>(San Francisco County Super. Ct. No. CPF-21-517433) |

The California Gambling Control Commission denied the application of Sutter's Place, Inc. (Sutter) to increase the number of gaming tables it could have in a cardroom it operates in the city of San José.  The Commission denied Sutter's application because it believed the requested increase exceeded the number of tables permitted by the Gambling Control Act.  (Bus. & Prof. Code, § 19800 et seq.[1])  Sutter petitioned for a writ of mandate directing the Commission to set aside its decision.  The trial court denied the petition.

There are no disputed facts.  The sole issue is one of law, specifically the interplay of state statutes and municipal ordinances.  The parties correctly agree that in these circumstances our review is de novo.

_____

[1]  Subsequent statutory references are to the Business and Professions Code unless otherwise indicated.

1

(*Weatherford v. City of San Rafael* (2017) 2 Cal.5th 1241 1246-1247; *Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 724.)

The superior court (Hon. Richard B. Ulmer) composed an admirably concise statement of decision which, with minor, non-substantive modifications, merits quoting at length.

"Sutter's Place, Inc., doing business as Bay 101, . . . is one of two cardrooms in San Jose at present. It is subject to the Gambling Control Act (Bus. & Prof. Code, § 19800 et seq.) and thus to the California Gambling Control Commission and the Department of Justice Bureau of Gambling Control.

"On January 1, 1996, San Jose had two ordinances Bay 101 says are relevant here. One provided: 'No cardroom shall be issued a permit for more than forty tables.' (San Jose Municipal Code § 6.22,120(A).) The other provided: 'The City Council may issue cardroom and card table permits, in its sole discretion, as long as the total number of card table permits issued in the City does not exceed one hundred and eighty one (181).' (*Id.*, § 6.22.040.)

"Two California statutes are also relevant. Business and Professions Code § 19962(b) provides that an 'ordinance in effect on January 1, 1996 that authorizes legal gaming . . . may not be amended to expand gaming in that jurisdiction beyond that permitted on January 1, 1996.' Business and Professions Code § 19961(b)(3) defines 'expansion of gambling' to mean an 'increase of 25 percent or more in the number of gambling tables that may operate in a gambling establishment' and permits a lesser increase if local voters approve.

"In 2010, San Jose voters passed a measure to increase the City's per-cardroom table limit from 40 to 49. In November 2020, San Jose voters passed Measure H, which purported to expand the permissible number of

2

gambling tables at any one cardroom to 64—more than 25% above the 40 limit in effect in 1996. The Bureau cautioned the City before the election that this would violate the Gambling Control Act. After the election, Bay 101 applied to the Commission to operate 15 additional gambling tables, for a total of 64. The Commission denied the application.

"Bay 101's core argument is that the Gambling Control Commission and the Bureau of Gambling Control are misinterpreting and misapplying the ordinances and statute set out above. I disagree.

"The language of San Jose Municipal Code § 6.22.120(A) is clear: 'No cardroom shall be issued a permit for more than forty tables.' Because that ordinance was 'in effect on January 1, 1996,' the 40 table per cardroom limit could 'not be amended to expand gambling' in San Jose except as permitted by state law—e.g., San Jose's less than 25% increase from 40 to 49 tables in 2010. (Bus. & Prof. Code, §§ 19962(b), 19961(b)(3).) . . . .

"Bay 101 largely ignores the plain language of San Jose Municipal Code § 6.22.120(A) and Business and Professions Code §§ 19962 and 19961. Instead it relies on San Jose Municipal Code § 6.22.040: 'The City Council may issue cardroom and card table permits, in its sole discretion, as long as the total number of card table permits issued in the City does not exceed . . . 181.' The reliance is misplaced.

"*First*, in 2020 the San Jose City Council did not issue 'card table permits, in its sole discretion.' Rather, San Jose voters purported to authorize an increase in card table permits to 64 with Measure H. Thus, § 6.22.040 does not apply in our case.

"*Second*, a 'specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, although the latter, standing alone, would be broad enough to include the subject to which the

3

more particular provision relates.' (*San Francisco Taxpayers Assn. v. Board of Supervisors* (1992) 2 Cal.4th 571, 577.) Here, the specific ordinance is § 6.22.120(a), which relates directly to the particular subject at issue: How many gambling tables may any one cardroom have? The general ordinance is § 6.22.040, which relates to 'the total number of card table permits issued in the City.'

"*Third*, as Bay 101 recites: 'Laws must be construed in harmony with other provisions related to the same subject.' San Jose Municipal Code § 6.22.120(A) and § 6.22.040 are readily harmonized. As above, the former provides how many gambling tables any one cardroom may have. The latter regarded gambling tables in the City as a whole, and may well have contemplated a future San Jose with new cardrooms. Bay 101 does not harmonize the two ordinances, effectively reading § 6.22.120(A) out of the 1996 municipal code.

"Bay 101 further argues: 'Greater deference should be given to an agency's interpretation where the agency has expertise and technical knowledge.' However, the administrative agencies with expertise on gambling are the Gambling Control Commission and the Bureau of Gambling Control, not the City of San Jose.

"Bay 101 also argues 'legislative history.' However, . . . extrinsic matter is not resorted to where, as here, statutory language is clear and unambiguous. Moreover, much of what Bay 101 calls legislative history is actually opinions by former city officials rendered decades after the relevant ordinances were passed.

"Sutter's Place, Inc.'s motion for peremptory writ of mandate is denied in full."

4

Sutter purported to file a notice of appeal from the statement of decision, but that is not an appealable order or judgment when, as here, the court directed prevailing counsel to prepare a proposed judgment. (*Alan v. American Honda Motor Co., Inc.* (2007) 40 Cal.4th 894, 901.) However, pursuant to the policy of liberally construing a notice of appeal in favor of its sufficiency (Cal. Rules of Court, rule 8.100(a)(2)), Sutter's notice will be treated as sufficient to commence a valid, premature appeal from the actual judgment subsequently entered (*id.*, rule 8.104(d)(2)).

There is one other preliminary matter. During the administrative proceedings, Sutter's position was informally supported by the City of San José and Garden City, Inc. dba Casino M8trix, the only other licensed cardroom in San José. This informal alliance continued in proceedings before the superior court. However, the alliance dissolved when Sutter pressed on with this appeal.

The Gambling Control Act was enacted in 1997, and became effective January 1, 1998. (Stats. 1997, ch. 867; § 19800 et seq.) In enacting this measure, the Legislature declared that "[u]nregulated gambling enterprises are inimical to the public health, safety, welfare, and good order." (§ 19801, subd. (d).) The Legislature also declared, "Public trust and confidence can only be maintained by strict and comprehensive regulation of all persons, locations, practices, associations, and activities related to the operation of lawful gambling establishments . . . ." (*Id.,* subd. (h).)

One of the original provisions of the Gambling Control Act specified that the measure "shall not prohibit the enactment, amendment, or enforcement of any ordinance by any city, county, or city and county relating to licensed gambling establishments *that is not inconsistent with this chapter.*" (§ 19960, italics added.)

5

Just what would be "inconsistent" with the Act is spelled out in the next two sections:

"(a)(1)  Except as provided in paragraph (2), on or after the effective date of this chapter, any amendment to any ordinance that would result in an expansion of gambling in the city, county, or city and county, shall not be valid unless the amendment is submitted for approval to the voters of the city, county, or city and county, and is approved by a majority of the electors voting thereon.

"(2)  Notwithstanding paragraph (1) and Section 19962, an ordinance may be amended without the approval of the electors after the effective date of this chapter to expand gambling by a change that results in an increase of less than 25 percent with respect to any of the matters set forth in paragraphs (1), (2), (3), and (5) of subdivision (b).  Thereafter, any additional expansion shall be approved by a majority of the electors voting thereon.

"(b)  For the purposes of this article, 'expansion of gambling' means, when compared to that authorized on January 1, 1996, or under an ordinance adopted pursuant to subdivision (a) of Section 19960,[2] whichever is the lesser number, a change that results in any of the following:

"(1)  An increase of 25 percent or more in the number of gambling tables in the city, county, or city and county.

"(2)  An increase of 25 percent or more in the number of licensed card rooms in the city, county, or city and county.

---

[2]  "No city, county, or city and county shall issue a gambling license with respect to any gambling establishment unless one of the following is true: [¶] The gambling establishment is located in a city, county, or city and county wherein, after January 1, 1984, an ordinance was adopted by the electors of the city, county, or city and county in an election . . . ."

"(3) An increase of 25 percent or more in the number of gambling tables that may be operated in a gambling establishment in the city, county, or city and county.

"(4) The authorization of any additional form of gambling, other than card games, that may be legally played in this state, to be played at a gambling establishment in the city, county, or city and county.

"(5) An increase of 25 percent or more in the hours of operation of a gambling establishment in the city, county, or city and county." (§ 19961.)

And "An ordinance in effect on January 1, 1996, that authorizes legal gaming within a city, county, or city and county may not be amended to expand gaming in that jurisdiction beyond that permitted on January 1, 1996." (§ 19962, subd. (b).)

In his brief for the Commission, the Attorney General refers to "the statewide moratorium against the expansion of gambling contained in the Gambling Control Act," but this is not entirely accurate. The Legislature's attitude toward gambling was clearly guarded, but expansion was not prohibited. As shown by the language of section 19961 just quoted, expansion is allowed, but only in specified ways. It is only "[u]nregulated gambling enterprises" that the Legislature deemed "inimical to the public health, safety, welfare, and good order." (§ 19801, subd. (d).)

It is undisputed that on January 1, 1996, the date specified in sections 19961 and 19662, San José Municipal Code section 6.22,120(A) plainly and flatly provided: "No cardroom shall be issued a permit for more than forty tables." The 2010 San José ordinance increasing the number to 49 was not a 25% increase and thus did not transgress section 19961, subdivisions (a)(2) and (b)(3). Such could not be said for the 2020 ordinance

7

authorizing 64 tables in one cardroom; going from 40, or 49, to 64 is plainly more than a 25 percent increase.

Sutter's contentions on this appeal are limited. Sutter's does not argue on appeal that the above-quoted provisions or any other provisions of the GCA are ambiguous or require interpretation to resolve the appeal. Rather, its arguments here focus on the interpretation of local law and mirror the arguments rejected by Judge Ulmer. Only one aspect of Sutter's position merits additional comment by us.

Sutter contends that San José has the "sole discretion[] to issue permits allowing an existing cardroom to operate more than forty tables." Sutter does not base this supposed authority on San José's "Home Rule" powers as a charter city, but on the language of section 6.22.040 of the San José Municipal Code. Sutter tries to bolster its argument by wrapping it in the language of deference, that courts should defer to how a unit of local government interprets its empowering ordinances. Sutter's labors are in vain.

Citing *Harrington v. City of Davis* (2017 16 Cal.App.5th 420, Sutter's argues we should defer to the manner in which San José interprets and applies it ordinances. We cannot agree. *Harrington* involved an administrative agency's interpretation of a municipal building code. It was those circumstances which led the Court of Appeal to say: "Greater deference should be given to an agency's interpretation where ' "the agency has expertise and technical knowledge, especially where the legal text to be interpreted is technical, obscure, complex, open-ended, or entwined with issues of fact, policy, and discretion." ' " (*Id.* at p. 435.)

That is not the situation here. The only administrative agency is a state agency, the Gambling Control Commission, which is not asking for any

8

deference. Sutter's is asking us to defer to a political organ, the San José City Council, and how it interprets its municipal ordinances. We note that Sutter's is in the unusual position of arguing on behalf of an entity that is no longer a party and is not participating in this appeal. Most importantly, the subject is not technical, but pure judicial construction of legal texts, where courts do not defer. (See, e.g., *Kaanaana v. Barrett Business Services, Inc.* (2021) 11 Cal.5th 158, 179; *State Building & Construction Trades Council of California v. Duncan* (2008) 162 Cal.App.4th 289, 304.)

Moreover, giving deference to the City's claimed construction of its own ordinances would seriously unbalance the inquiry before us. The City's ordinances do not exist in isolation from the state statutes that define the scope of the City's discretion, which is limited to whether or not to legislate as permitted by state law. Viewed in the cold light of day, the claim of deference would allow a city, county, or city and county to flout state law at its pleasure. Such a view of municipal power under the Gambling Control Act cannot be entertained.

## DISPOSTION

The judgment denying mandate is affirmed.

 

_____

STEWART, J.

We concur.

_____

RICHMAN, Acting P.J.

_____

MAYFIELD, J.*

*Sutter's Place, Inc. v. California Gambling Control Commission* (A163287)

---

\* Judge of the Mendocino County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.