Filed 12/12/16

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| In re | ) | |
| TRANSIENT OCCUPANCY TAX CASES. | ) | S218400 |
| | ) | Ct.App. 2/2 B243800 |
| | ) | |
| | ) | Los Angeles County |
| | ) | Super. Ct. No. JCCP 4472 |

Like many other communities in this state and elsewhere, the City of San Diego (San Diego) has adopted an ordinance imposing a tax on visitors for the privilege of occupancy in hotels located within the city. The tax, known as a transient occupancy tax, is calculated as a percentage of the "Rent charged by the Operator" of the hotel. (See San Diego Mun. Code, § 35.0103.) In recent years, many visitors have booked and paid for their hotel reservations online at the websites of online travel companies (OTCs) such as defendants and respondents in this case.[1] The question before us is whether the San Diego transient occupancy tax is payable on the amount retained by the OTCs above the amount remitted to the hotels as the agreed wholesale cost of the room rental. We conclude that under the San Diego ordinance, in a "merchant model" transaction of the sort at issue here, the operator of a hotel is liable for tax on the wholesale cost plus any

---

[1] Defendants and respondents in this case are Hotels.com, L.P.; Priceline.com, Inc.; Travelweb LLC; Expedia, Inc.; Hotwire, Inc.; Hotels.com G.P., LLC; Travelocity.com, LP; Site59.com, LLC; Orbitz, LLC; Travelnow.com; Lowestfare.com, LLC; Trip Network, Inc. (doing business as Cheaptickets.com); and Internetwork Publishing Corp. (doing business as Lodging.com).

1

additional amount for room rental the operator requires the OTC to charge the visitor under what have been termed "rate parity" provisions of hotel-OTC contracts but, as San Diego has effectively conceded, OTCs are not operators within the meaning of the ordinance. We shall therefore affirm the judgment of the Court of Appeal.

The parties have not challenged the factual findings made by the hearing officer in the administrative proceedings. Accordingly, we accept that those findings are supported by substantial evidence (*Environmental Protection Information Center v. California Dept. of Forestry & Fire Protection* (2008) 44 Cal.4th 459, 479), while independently reviewing the legal determinations reached below (*City of San Diego v. Board of Trustees of California State University* (2015) 61 Cal.4th 945, 956), bearing in mind that an ambiguity in a tax statute will generally be resolved in favor of the taxpayer (*Microsoft Corp. v. Franchise Tax Bd.* (2006) 39 Cal.4th 750, 759; see *Agnew v. State Bd. of Equalization* (1999) 21 Cal.4th 310, 330).

We first describe the nature of the transactions at issue. OTCs publish on their websites comparative information about airlines, hotels, and car rental companies, and allow consumers to book reservations with these travel and hospitality providers. OTCs may do business under any of several business models; involved here is the one known as the merchant model.[2] Under the

---

[2] Other business models include the agency model, under which the customer, after making a reservation through the OTC, pays the room rent and associated tax directly to the hotel when checking in; after the customer's stay, the hotel remits a prearranged percentage of the rent to the OTC as a commission and pays tax on the full amount of the room rent; and the opaque model, where no room rate as such is shown to the customer and the customer instead bids for a reservation at a price the customer sets.

merchant model, OTCs contract with hotels to advertise and rent rooms to the general public. OTCs handle all financial transactions related to the hotel reservations and become the merchant of record as listed on the customer's credit card receipt, but do not themselves own, operate or manage hotels, maintain an inventory of rooms, or possess or obtain the right to occupy any rooms. The price the hotel charges the OTC for the room is the "wholesale" price; rate parity provisions[3] in most master contracts between OTCs and hotels bar the OTC from selling a room for a rent lower than what the hotel quotes its customers directly. The OTC offers the rooms to the public at retail prices. Its charge to the customer includes a "tax recovery charge," which represents the OTC's estimate of what the hotel will owe in transient occupancy tax based on the wholesale price of the room as charged by the hotel to the OTC. The OTC provides the customer with a receipt that lists the room rate and, on a separate line, an amount for taxes and service fees.[4] Once the reservation has been made and paid for, the OTC provides customer service until the customer checks into the hotel. The hotel then bills the OTC for the wholesale price of the room plus the transient occupancy tax the hotel will have to pay based on the room's wholesale price. The OTC remits the charged amount to the hotel, which in turn remits the tax to San Diego; the OTC retains its markup and service fees.

---

[3] The parties differ regarding the meaning of the term "rate parity" in reference to the hotel-OTC contracts. We need not resolve this nomenclature dispute; for present purposes, when we refer to rate parity provisions we mean any provisions in hotel-OTC contracts that set the "floor" room rate the OTCs must quote and charge customers.

[4] Although at earlier stages of this litigation San Diego sought to apply the room tax to the fee portion of the taxes-and-fees line item shown on the customer receipt, it has disavowed the effort here.

3

We turn now to the ordinance at issue in this case. First enacted in 1964, it provides that "[f]or the privilege of Occupancy in any Hotel located in [San Diego], each Transient is subject to and shall pay a tax in the amount of six percent (6%) of the Rent charged by the Operator." (San Diego Mun. Code, § 35.0103.) Four times in subsequent years San Diego enacted increases in the tax rate without altering the ordinance's operative language. (*Id.*, §§ 35.0104, 35.0105, 35.0106, 35.0108.) Proceeds of the tax are to be used for promoting San Diego, including by planning, building, and maintaining tourism-related cultural, recreational, and convention facilities, among other governmental purposes. (San Diego Mun. Code, § 35.0101, subd. (b).)

Other provisions define the ordinance's key terms. " 'Occupancy' means the use or possession, or the right to the use or possession, of any room, or portion thereof, in any Hotel . . . for dwelling, lodging, or sleeping purposes." (San Diego Mun. Code, § 35.0102.) " 'Rent' means the total consideration charged to a Transient as shown on the guest receipt for the Occupancy of a room, or portion thereof, in a Hotel . . . . 'Rent' includes charges for utility and sewer hookups, equipment, (such as rollaway beds, cribs and television sets, and similar items), and in-room services (such as movies and other services not subject to California taxes), valued in money, whether received or to be received in money, goods, labor, or otherwise. 'Rent' includes all receipts, cash, credits, property, and services of any kind or nature without any deduction therefrom." (*Ibid.*) " 'Operator' means the Person who is the proprietor of the Hotel, . . . whether in the capacity of owner, lessee, sublessee, mortgagee in possession, licensee, or any other capacity. 'Operator' includes a managing agent, a resident manager, or a resident agent, of any type or character, other than an employee without

4

management responsibility." (*Ibid.*)[5] " 'Transient' means any Person who exercises Occupancy, or is entitled to Occupancy, by reason of concession, permit, right of access, license, or other agreement for a period of less than one (1) month." (*Ibid.*)

The ordinance provides that "[e]ach Operator shall collect the tax . . . to the same extent and at the same time as the Rent is collected from every Transient." (San Diego Mun. Code, § 35.0112, subd. (a).) "The amount of tax charged each Transient shall be separately stated from the amount of Rent charged, and each Transient shall receive a receipt for payment from the Operator." (*Id.*, § 35.0112, subd. (c).) The operator must, among other remitting and reporting responsibilities, "remit monthly the full amount of taxes collected for the previous month with the appropriate approved return form available from the City Treasurer." (*Id.*, § 35.0114, subd. (a).) The operator must "keep and preserve . . . all business records as may be necessary to determine the amount of such tax for which the operator is liable for collection and payment to the City." (*Id.*, § 35.0121.) The San Diego city treasurer may inspect the operator's business records and "apply auditing procedures necessary to determine the amount of tax due to the City." (*Ibid.*) If an operator "fail[s] or refuse[s] to collect" or remit the tax, the treasurer "shall forthwith assess the tax and penalties . . . against the operator." (*Id.*, § 35.0117, subd. (a).) An operator may challenge the assessment by requesting a hearing, and must be given notice of the final "determination and the amount of such tax and penalties" imposed. (*Id.*, § 35.0118, subd. (a).)

In December 2004, the City of Los Angeles filed a putative class action on behalf of various California cities against various OTCs, alleging each such

---

[5] San Diego has abandoned the argument it made in earlier stages of this litigation that OTCs are operators within the meaning of the ordinance.

company was liable for transient occupancy tax as the "operator" of every hotel. In October 2007, putative class member San Diego began auditing the OTCs. Eventually it issued transient occupancy tax assessments against the OTCs, which each OTC timely appealed. A hearing officer conducted a consolidated administrative hearing to determine whether each OTC had obligations and liability under the tax. In May 2010 the officer issued a decision, finding that the OTCs owed tax on their markup in merchant model transactions. The OTCs challenged the hearing officer's determination by filing a petition for writ of mandate and cross-complaint seeking declaratory relief. After briefing and argument, the superior court granted the OTCs' motion for judgment granting the writ of mandate and denied San Diego's cross-motion for judgment denying the writ.[6] The court thereafter issued the writ, ordering the hearing officer to vacate his ruling in favor of the City, issue a new ruling that the OTCs are not liable for the tax, and set aside the assessments. The court reasoned the ordinance imposes tax on rent "charged by the Operator"; OTCs are not operators or managing agents of the hotels; and the markup the OTCs charge for their services is not part of the rent subject to the tax.

San Diego appealed. Noting the salient facts are undisputed and the case turns solely on the interpretation of the ordinance, the Court of Appeal affirmed. Like the superior court, it reasoned the ordinance imposed tax on "rent charged by the . . . operator" and concluded that hotels, not the OTCs, are operators within the meaning of the ordinance.

---

[6] This and other lawsuits alleging similar claims and pending in various jurisdictions within the state have been coordinated in the Los Angeles County Superior Court as *Transient Occupancy Tax Cases*, JCCP 4472.

6

San Diego petitioned for rehearing on the basis the Court of Appeal had improperly cited and relied on two unpublished decisions arising out of the same coordinated proceedings; the Court of Appeal granted rehearing and issued a new opinion again citing the same unpublished decisions, explaining the reliance was proper because the decisions were relevant as law of the case. (See Cal. Rules of Court, rule 8.1115(b).) Contending the Court of Appeal's law-of-the-case analysis was flawed, San Diego unsuccessfully petitioned for rehearing. We granted San Diego's petition for review.

San Diego contends the tax base for calculating the tax must be the full amount of the payment the customer is charged to obtain occupancy. In San Diego's view, the stated purpose of the tax—"It is the purpose and intent of the City Council that there shall be imposed a tax on Transients" (San Diego Mun. Code, § 35.0101, subd. (a))—reflects a legislative focus on the transaction between the OTC and the customer. The statutory definition of rent—"the total consideration charged to a Transient as shown on the guest receipt for the Occupancy of a room" (San Diego Mun. Code, § 35.0102)—in San Diego's view, shows the tax base was intended to be the total amount quoted to, charged to, and paid by the customer, not the lesser amount the hotel has agreed to accept as its share of the rental proceeds; indeed, a customer cannot obtain the privilege of occupancy by paying only the amount the hotel nets on OTC transactions nor anything less than the total amount quoted and charged to him or her. Moreover, San Diego observes, the tax is determined and collected at the same time the room is booked (*id.*, § 35.0112, subd. (a))—the "taxable moment," as San Diego calls it.

We agree with San Diego's argument in part. The ordinance imposes the tax on the amount "charged by the Operator" (San Diego Mun. Code, § 35.0103); it does not refer to amounts "received" or "collected" by the operator. To the extent a hotel determines the markup, such as by contractual rate parity provisions

7

requiring the OTC to quote and charge the customer a rate not less than what the hotel is quoting on its own website, it effectively "charges" that amount, whether or not it ultimately receives or collects any portion of the markup, and that amount is therefore subject to the tax. Because, however, the ordinance imposes on "the Operator" alone the duty to remit the tax (San Diego Mun. Code, § 35.0114, subd. (a)), and subjects the operator alone to the assessment process when taxes are determined to be unpaid and owing (*id.*, § 35.0117, subd. (a)), it does not appear to contemplate that the city treasurer may assess an intermediary such as an OTC for unpaid transient occupancy tax.

San Diego contends the entire amount paid by the customer, presumably including any portion of the markup within the exclusive control of the OTC above that set by the hotel, is subject to the tax because that amount is charged "for the privilege of Occupancy" within the meaning of the ordinance, and no lesser amount will gain that privilege for the customer. (San Diego Mun. Code, § 35.0103.) This contention, however, fails to acknowledge that the relevant ordinance identifies the taxable amount as the rent "charged by the Operator" (*ibid.*)—and the only such amount involved in online room rental transactions is, as we have seen, the wholesale room rate plus any portion of the markup set by the hotel pursuant to the contractual rate parity provisions or otherwise. Thus, it is the wholesale room rate plus the hotel-determined markup, exclusive of any discretionary markup set by the OTC, that is "charged by the Operator" and subject to the tax.[7]

---

[7] In practice, the distinction we are drawing between the portion of the markup set by the hotel pursuant to contractual rate parity provisions and the portion unilaterally set by the OTC may be chimerical. Market forces are likely to ensure that the room rate charged by an OTC is seldom significantly higher than the rate a hotel charges to its customers directly.

San Diego further contends that even though the OTCs do not qualify as operators within the meaning of the ordinance, they are liable for the tax under various contractual and statutory theories. We are unpersuaded.

San Diego first asserts the OTCs are liable for assessment of room tax because they are agents of the hotels for purposes of charging and collecting the tax. It points to the hearing officer's finding, unchallenged in this litigation, that "[t]he OTCs serve as the hotels' agents in assuming essentially (or absolutely) all of the marketing, reservation, room price collection, and customer service functions as to those Transients who book online through the OTCs." San Diego also cites the Court of Appeal's statement that "[t]he OTC collects the rent on the hotel's behalf" and the OTCs' acknowledgment that they "serv[e] as an intermediary" in "facilitating a guest's payment to the hotel for the hotel's furnishing of sleeping accommodations." By virtue of this function, San Diego contends the entirety of what the OTCs collect is deemed collected on behalf of the principal.

That the OTCs act as hotels' agents or intermediaries for the limited purpose of charging and collecting the rent, however, does not subject the OTCs to assessment as an operator or make any undifferentiated portion of the charge representing the amount unilaterally set by the OTCs "Rent charged by the Operator." As noted, the hotels set the parity or floor rate the OTCs must charge the visitor, but do not control or determine any additional amount the OTCs may charge for their services, a circumstance that refutes any suggestion the OTCs are the hotels' agents for purposes of setting and collecting such discretionary additional charges.

San Diego also cites contractual provisions by which the OTCs agree to be responsible for any taxes assessed by any governmental authority on the markup, to collect and remit room tax, and to assume liability to San Diego for nonpayment

9

or underpayment of the tax. These provisions allocate responsibility as between the hotels and the OTCs for properly assessed room taxes but, like the other contractual terms discussed above, they do not in themselves create such liability; only the ordinance can do that. The same reasoning defeats San Diego's assertion it is entitled as a third party beneficiary of the hotel-OTC contracts to tax the OTCs for the entire markup: Even assuming San Diego is a third party beneficiary of the contracts, a question we need not address, the contracts cannot expand room tax liability under the ordinance.

Neither Civil Code section 2777 nor Civil Code section 2344 assists San Diego. The former statute provides that "[o]ne who indemnifies another against an act to be done by the latter, is liable jointly with the person indemnified, and separately, to every person injured by such act." (Civ. Code, § 2777.) But San Diego fails to cite any decisions holding that a taxing authority may invoke an indemnity agreement to impose an assessment on a party not otherwise subject to assessment under the statute in question. Civil Code section 2344 provides that "[i]f an agent receives anything for the benefit of his principal, to the possession of which another person is entitled, he must, on demand, surrender it to such person . . . ." But as we have seen, the circumstances that the OTCs act as agents for the hotels in renting rooms, providing customer service, and collecting and remitting to the hotels the rent and room tax on all transactions, and that, as between themselves, the hotels and the OTCs may contractually allocate to the OTCs responsibility for unpaid room tax, cannot expand the reach of the ordinance and, in particular, do not subject an entity other than an Operator to assessment of the tax and penalties (San Diego Mun. Code, § 35.0117, subd. (a)).

10

## DISPOSITION

The judgment is affirmed.

**WERDEGAR, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** In re Transient Occupancy Tax Cases
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 225 Cal.App.4th 56
**Rehearing Granted**

_____

**Opinion No.** S218400
**Date Filed:** December 12, 2016
_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Elihu Berle

_____

**Counsel:**

Daniel F. Bamberg and Jon E. Taylor , Deputy City Attorneys; Kiesel Boucher Larson, William L. Larson, Thomas H. Peters, Paul R. Kiesel; Baron & Budd, Laura J. Baughman, Thomas M. Sims; McKool Smith, McKool Smith Hennigan, Steven D. Wolens, Gary Cruciani; Greines, Martin, Stein & Richland, Irving H. Greines, Kent L. Richland, Cynthia E. Tobisman and David E. Hackett for Plaintiff and Appellant City of San Diego.

Colantuono, Highsmith & Whatley, Michael G. Colantuono and Ryan Thomas Dunn for League of California Cities and California State Association of Counties as Amici Curiae on behalf of Plaintiff and Appellant City of San Diego.

Skadden, Arps, Slate, Meagher & Flom, Darrel J. Hieber, Stacy R. Horth-Neubert and Daniel M. Rygorsky for Defendants and Respondents Priceline.com Incorporated and Travelweb LLC.

Jones Day, Elwood Lui, Brian D. Hershman and Erica L. Reilley for Defendants and Respondents Expedia, Inc., Hotwire, Inc. Hotels.com, L.P., and Hotels.com G.P., LLC.

K&L Gates, Nathaniel S. Currall; Kelly Hart & Hallman, Brian S. Stagner and Chad Arnette for Defendants and Respondents Travelocity.com L.P., and Site59.com, LLC.

McDermott Will & Emery, Elizabeth Herrington, Jessica A. Mariani and Jeffrey A. Rossman for Defendants and Respondents Orbitz, LLC, Trip Network, Inc., doing business as Cheaptickets.com and Internetwork Publishing Corp. doing business as Lodging.com

Julian M. Baum & Associates and Julian M. Baum for Society of Travel Agents, Inc., as Amicus on behalf of Defendants and Respondents.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Kent L. Richland
Greines, Martin, Stein & Richland
5900 Wilshire Boulevard, 12th Floor
Los Angeles, CA  90036
(310) 859-7811

Darrel J. Hieber
Skadden, Arps, Slate, Meagher & Flom
300 South Grand Avenue, 34th Floor
Los Angeles, CA  90071
(213) 687-5000