Filed 8/20/21

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| NANCIE BROWN, | |
| Plaintiff and Appellant, | E074341, E075762 |
| v. | (Super. Ct. No. PSC1801783) |
| MONTAGE AT MISSION HILLS, INC., | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  Kira L. Klatchko, Judge.
Reversed.

Slovak Baron Empey Murphy & Pinkney, Shaun M. Murphy and David A. Smith
for Plaintiff and Appellant.

Fiore, Racobs & Powers and Julie R. Balbini for Defendant and Respondent.

1

An individual bought a condominium, which she consistently rented for short terms. Sixteen years after her purchase, the owner's association amended its governing documents to prohibit renting properties for less than 30 days. We agree with the owner that she was exempt from this prohibition under Civil Code section 4740, subdivision (a) (section 4740). That provision provides that an owner of a property in a common interest development "shall not be subject to a provision in a governing document or an amendment to a governing document that prohibits the rental or leasing of" the owner's property unless that document or amendment "was effective prior to the date the owner acquired title" to the property. The trial court held that she was not exempt, so we reverse.

I.

FACTUAL AND PROCEDURAL BACKGROUND

Defendant and respondent Montage at Mission Hills, Inc. is a common interest development (CID) located in Cathedral City.[1] Plaintiff and appellant Nancie Brown purchased and acquired title to a property in Montage in 2002. At the time, Montage's CC&Rs—Montage's governing documents—did not prohibit any form of renting.

---

[1] The Davis-Sterling Act defines a common interest development as including a community apartment project, a condominium project, a planned development, or a stock cooperative. (Civ. Code, § 4100.) Any of these is managed by an association that is called either an owner's association or a community association. (Civ. Code, § 4800.) An association's governing document is called a "Declaration" (Civ. Code, § 4250), or more fully a "Declaration of Covenants, Conditions and Restrictions," which is commonly called the association's "CC&Rs." (See generally *Nahrstedt v. Lakeside Village Condominium Association* (1994) 8 Cal.4th 361, 369.)

Although the governing documents imposed some recordkeeping requirements for rentals, they did not ban short-term rentals (STRs) or require rentals to be for a minimum duration. This was important to Brown because she planned to use the property as an investment rental property and expected to be able to rent it for any length of time.

Brown consistently rented the property for short terms (that is, less than 30 days) from 2002 until the fall of 2017. In January 2018, Montage amended its governing documents to prohibit its members, including Brown, from renting or leasing their properties for periods shorter than 30 days. Montage notified Brown that it would enforce the new prohibition against STRs if she continued to rent her property for short terms.

Brown thereafter sued Montage, seeking declaratory relief among other claims, all of which turned on her assertion that she is exempt from Montage's prohibition against STRs under section 4740. Brown sought summary adjudication on her declaratory relief claim, requesting that the trial court declare that section 4740 exempts her from the prohibition.

Montage responded with a motion for summary judgment. It argued that Brown's claims failed because (1) section 4740 precludes CIDs from imposing complete bans on renting, but Montage's prohibition on STRs is only a restriction on renting, and (2) Brown's use of her property for STRs violated the governing documents' prohibition on using the property for commercial purposes.

3

The trial court sided with Montage, finding that section 4740 does not apply because Montage's governing documents do not "prohibit the rental or leasing" of Brown's property but instead only restrict its rental. Because all of Brown's claims turn on her assertion that section 4740 exempts her from the prohibition on STRs in Montage's governing documents, the trial court granted Montage's motion for summary judgment and denied Brown's motion for summary adjudication. Brown timely appealed.

## II.

## DISCUSSION

Section 4740, subdivision (a) states that an owner of a property in a CID shall not be subject to a provision in its regulations "that prohibits the rental or leasing of any of the separate interests in that common interest development" unless that provision "was effective prior to the date the owner acquired title to their separate interest." The sole issue in this appeal is whether section 4740 exempts Brown from the restriction on rentals added to Montage's governing documents after she had acquired title to her condominium. We conclude that it does.

Because this case comes to us on an appeal from the grant of a motion for summary judgment (to Montage) and denial of a motion for summary adjudication (to Brown) that turn on the same issue, we review the matter de novo based on facts that are undisputed. (*Avivi v. Centro Medico Urgente Medical Center* (2008) 159 Cal.App.4th 463; *Hypertouch, Inc. v. ValueClick, Inc.* (2011) 192 Cal.App.4th 806, 817 fn. 3.)

4

When Brown purchased her property in 2002, Montage's governing documents did not preclude her from renting her property for short terms. Now, however, the governing documents would prohibit her from doing so. The question in this appeal is whether Montage's amendments to its governing documents in 2018 prohibiting STRs constitute "amendment[s] to a governing document that prohibit[] the rental" of Brown's property under section 4740. If so, section 4740 exempts Brown from the amendments because she acquired title before they took effect.

We must interpret a statute to effectuate the law's purpose. (*Green v. State of California* (2007) 42 Cal.4th 254, 260.) To do so, we first look to the usual and ordinary meaning of the statute's words. (*Ibid*.) If the ordinary meaning of the words is clear and unambiguous, "the statute's plain meaning controls." (*Ibid*.)

With regard to STRs, the plain meaning of section 4740 is not clear and unambiguous. On the one hand, if a regulation forbids any category of rental, such as a short-term lease, that regulation "prohibits" that type of rental, even if it does not prohibit all rentals. On the other hand, the section's language could be read to bar only complete "prohibitions" on leasing but not "restrictions" on leasing that fall short of outright bans on all leasing. A treatise Montage cites accordingly reads it as "address[ing] only 'prohibitions' on leasing, not 'restrictions' on leasing. To the extent leasing is not totally prohibited, it is unclear what rental restrictions a [CID] might adopt and enforce retroactively." (Sproul, Howell & Rosenberry, Advising California Common Interest Communities (CEB 2017), § 6.49.) Another treatise identified the same ambiguity: "The

5

express language of [section] 4740, which uses the wording 'prohibition,' raises the question about 'restrictions' or 'limitations' on rentals as distinguished from 'prohibitions' against rentals. The question is: 'When does a restriction become a prohibition,' or 'when is a restriction not a prohibition'?" (Cal. Common Interest Developments Law & Prac. (2020 ed.) § 22:15.) These treatises both (a) conclude that there are some "restrictions" on leasing that are not "prohibitions" and (b) note that it is unclear what makes a regulation a restriction rather than a prohibition.

The parties dispute how to deal with these questions. Montage argues that its ban on STRs is a "restriction" on the rental of Brown's property, not a "prohibition." On the other hand, Brown argues that Montage "prohibits the rental" of her property because it prohibits her from renting her property for terms of less than 30 days. We do not think this dispute can be resolved by contemplating the text alone. Because both interpretations of section 4740 are plausible constructions of its plain language, the text of the statute is ambiguous as it relates to STRs. (See *Hoechst Celanese Corp. v. Franchise Tax Bd.* (2001) 25 Cal.4th 508, 519 [statute is ambiguous if it is "susceptible to more than one reasonable interpretation"].)

Montage suggests that any ambiguity as to whether section 4740 allows "limitations" and "restrictions" on rentals as opposed to "outright prohibitions" can be resolved by reference to other provisions of the Davis-Sterling Act. Montage notes that other statutes in the Davis-Sterling Act provide that CIDs cannot "limit or prohibit . . . the display of the flag of the United States" (Civ. Code, § 4705, subd.), "may not prohibit

posting or displaying of noncommercial signs, posters, flags, or banners" and may not "effectively prohibit[] or unreasonably restrict[]" various things within a CID. (E.g., Civ. Code, §§ 4745, subd. (a) 4745.1, 4750, 4754, subd. (c).) In Montage's view, the waythat other Sterling-Davis Act statutes use the terms "limit" and "restrict" in addition to the term "prohibit" means that "prohibits" in section 4740 does not encompass "limitations" or "restrictions" on "the rental or leasing" of CID properties, but rather contemplates only complete bans on "the rental or leasing" of CID properties. Thus, Montage argues bans on STRs are permissible under section 4740 because they are a "limitation" or "restriction" on the rental of CID properties.

Although we may consider other provisions in "the statutory scheme of which the statute is a part" to interpret an ambiguous statutory provision, we may consider "a variety of extrinsic aids, including . . . the legislative history." (*Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 997.) In doing so, we must "choose the construction that comports most closely with the Legislature's apparent intent." (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 88.) We do not think the other Davis-Stirling provisions clearly settle the matter of interpreting the text of section 4740 because they also leave interpretive issues about what they prohibit and restrict. For the reasons explained below, we conclude the Legislature's intent underlying section 4740 is best articulated in the statute's legislative history. We therefore reject Montage's argument that we need not consider section 4740's legislative history, and we turn to that history to aid in

determining the statute's meaning. (*Uber Technologies Pricing Cases* (2020) 46 Cal.App.5th 963, 973.)

That history indicates that the Legislature intended broad protection for owners against restrictions on renting, including the sort of restriction at issue in this case. When enacting section 4740, the Senate's originating committee recognized that "[s]ome CIDs have restrictions on renting out units," such as "requiring a minimum amount of time for leases." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 150 (2011-2012 Reg. Sess.) as amended Apr. 25, 2011.) Section 4740 was proposed to "respond to those restrictions." The corresponding Assembly committee stated that section 4740 was necessary because "only express legislative language will protect an owner's right to lease his or her property from leasing restrictions that may be adopted by CID members subsequent to purchase." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 150 (2011-2012 Reg. Sess.) as amended June 9, 2011.) In these reports, then, the committees not only used the word "restrictions" (rather than "prohibitions") but also made at least one reference to minimum-time restrictions.

Further, the legislative history indicates that the Legislature's intention was to ensure that owners maintained all the rental and leasing rights they had at the time of purchase. By enacting section 4740, the Legislature sought to "preserv[e] the CID's right to adopt leasing restrictions, while at the same time ensuring that the owner can only be so limited if the restrictions were in place at the time the interest was acquired." The Legislature thus intended section 4740 to ensure that "[i]f members of a [homeowners

association] vote to pass a restriction on rentals the restriction would not apply to an owner that had the right to rent or lease when they purchased unless they agree to waive that right." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 150 (2011-2012 Reg. Sess.) as amended June 9, 2011.)

Put another way, in enacting section 4740, the Legislature "declare[d] that the rights of CID owners to rent or lease their properties, as the rights existed at the time they acquired them, should be protected." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 150 (2011-2012 Reg. Sess.) as amended Apr. 25, 2011.) That is, the Legislature passed the statute to "[p]rovide[] that the right of an owner to rent or lease his or her separate interest [in a CID] shall be the same as when the owner purchased his or her separate interest throughout the life of ownership." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 150 (2011-2012 Reg. Sess.) as amended June 9, 2011.)

In both its language and its substance, then, section 4740's legislative history shows that the Legislature sought for it to broadly address both rental "restrictions" and rental "prohibitions" in CIDs. In our view, the statute's legislative history demonstrates that the statute's goal is to exempt CID property owners from *any* kind of rental prohibition or restriction that did not exist when the owner acquired title to the property. The exemption must include at least the type of restriction at issue here, where a category of rentals (STRs) is barred. We do not address whether an association could enact a generally applicable limitation on occupants (such as a noise restriction) or impose

9

certain generally applicable requirements (such as a fee for using a common facility, or housekeeping rules) that affect renting but do not directly prohibit "the rental or leasing" of the property itself. That is, we need not decide whether a CID association may pass generally applicable rules that may negatively affect a CID property owner's ability to rent or lease her property yet do not "prohibit" its renting or leasing. We need not deal with that question in this case, where the regulation bars all STRs. That is a prohibition on renting or leasing, not a prohibition on something else that happens to affect it.

We note that the Legislative Counsel, whose opinions we must "give due deference" (*Grupe Development Co. v. Superior Court* (1993) 4 Cal.4th 911, 922), reached the same conclusion. In its opinion, "the legislative history [of section 4740] demonstrates that the Legislature sought to address both rental restrictions and outright prohibitions," and that the statute's purpose "was to exempt [CID property] owners from any rental prohibition, regardless of its nature, that took effect on or after January 1, 2012, unless the prohibition took effect before the owner acquired title."

The Legislative Counsel thus summarized its opinion about section 4740's effect on rental prohibitions in CIDs, including prohibitions on STRs, as follows: "[U]nder Civil Code section 4740, an owner of a separate interest in a [CID] is subject to a provision of a governing document or an amendment to a governing document that became effective on or after January 1, 2012, and that prohibits an owner from renting out the owner's interest in the property under certain conditions, *such as a short-term lease*, only if either (1) the prohibition took effect before the owner acquired title to his or

10

her separate interest in that development, or (2) the owner consented to the governing document or amendment containing that provision." (Italics added.) Given section 4740's legislative history, we agree.

In briefing, Montage dismisses section 4740's legislative history as "irrelevant"—an assertion we reject—and offers the following three arguments why Brown is not exempt from its ban on STRs.

Montage first argues an STR is a "limited license" to use the property, and thus Brown's guests who rent her property on a short-term basis are licensees, not "tenants" who rent the property under section 4740. Montage failed to preserve this line of argument for consideration on appeal. (See *Karlsson v. Ford Motor Co.* (2006) 140 Cal.App.4th 1202, 1216-1217.)[2]

Regardless, we reject the argument. In analogous contexts, courts have routinely used the term "rent" and its variants to refer to short-term occupancies. (See *City of San Bernardino Hotel/Motel Assn. v. City of San Bernardino* (1997) 59 Cal.App.4th 237, 246 ["The ordinance defines 'rent' as 'the consideration charged, whether or not received for the occupancy of space in a hotel . . . .'"]; *Batt v. City and County of San Francisco* (2010) 184 Cal.App.4th 163, 167 ["[T]he Hotel Tax imposes a levy of 14 percent 'on the rent for every occupancy of a guest room in a hotel in the City and County.'"]; *In re Transient Occupancy Tax Cases* (2016) 2 Cal.5th 131, 135 [discussing ordinance that

---

[2] Montage's one-line argument on the issue made in its summary judgment reply brief without any supporting authority or analysis is insufficient to preserve the argument on appeal. (See *Bently Reserve LP v. Papaliolios* (2013) 218 Cal.App.4th 418, 437.)

defined "rent" as "'the total consideration charged to a Transient'"].) The same conclusion is supported by the common, dictionary definition of the terms: The rental of a property is "a usually fixed periodical return made by a tenant *or occupant* of property to the owner for the possession and use thereof." (https://www.merriam-webster.com/dictionary/rent, italics added.) A STR is a "rental" under section 4740, even if it could be described as a "license" as well.

Montage next argues that Brown is effectively running a hotel out of her property. Montage thus contends Brown's use of her property for STRs violates regulations in the governing documents added in 2018 that allow her to use her property for "residential" use only and prohibit her from using it for "business or commercial activities." This argument is curious in that a lease exceeding 30 days also is a "business or commercial" activity in the sense that Montage is construing that phrase, particularly when that lease is for profit. Because the association does not purport to ban renting or leasing in general, the prohibition on business or commercial activity must refer to operating a business at the property, not renting or leasing the property itself. Indeed, the governing documents' prohibition is for such activities "in" any residence or "on" any portion of the property. We cannot see how the prohibition on "business or commercial" activity can be read to prohibit short term rentals but not longer term ones. Regardless, as we explained above, section 4740 exempts Brown from any regulation, whatever its label, that restricts her rights to rent her property if the regulation did not exist at the time she acquired title to the property and she does not agree to the regulation. Montage's prohibition on

12

"business or commercial" activities, if interpreted the way Montage does as a prohibition on STRs, is another such regulation that would contravene section 4740.[3]

Montage nonetheless argues its STR prohibition is permissible due to "public policy considerations." Montage observes that individual property owner's rights must sometimes give way to the public interest and the right of CIDs to decide their rules and restrictions. We must give effect, however, to the public policy considerations that were given priority by the Legislature when it adopted section 4740. (See *Palmer v. Agee* (1978) 87 Cal.App.3d 377, 384 [statutory interpretation that "will promote legislative intent, purpose and policy will override a construction that would defeat it"].) Section 4740 was enacted to protect "the rights of CID owners to rent or lease their properties, *as the rights existed at the time they acquired them*." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 150 (2011-2012 Reg. Sess.) as amended Apr. 25, 2011.) (Italics added.) Its goal is to ensure that "the right of an owner to rent or lease his or her separate interest [in a CID] shall be the same as when the owner purchased his or her separate interest throughout the life of ownership." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 150 (2011-2012 Reg. Sess.) as amended June 9, 2011.) Our task is to ensure that goal is met. (*Palmer v. Agee*, *supra*, at p. 384; *Bernard v. City of Oakland* (2012) 202 Cal.App.4th 1553, 1560-1561.)

---

[3] We do not address whether Montage and other CIDs can enforce a new generally applicable prohibition on operating a business at the property, even if that new rule burdens renters. That issue is not presented here however because Brown uses her property only for STRs.

Finally, we note that the Legislature enacted Civil Code section 4741 while this appeal was pending. That statute provides, among other things, that a CID may "adopt[] and enforce[] a provision in a governing document that prohibits transient or short-term rental of a separate property interest for a period of 30 days or less." (Civ. Code, § 4741, subd. (c).) But Civil Code section 4741 also provides that, "[i]n accordance with [s]ection 4740, [Civil Code section 4741] does not change the right of an owner of a separate interest who acquired title to their separate interest before the effective date of this section to rent or lease their property." (Civ. Code, § 4741, subd. (h).) Even recently, the Legislature sought to protect the short-term rental rights of CID property owners who took title to their properties before sections 4740 and 4741 went into effect, much like section 4740's general protection for the rental rights of owners who took title before a change to rental prohibitions in governing documents, even though in section 4741 the Legislature permitted CIDs to regulate STRs going forward.

Because Montage's prohibition on STRs did not exist when Brown acquired title to her property, she is exempt from the prohibition under section 4740. We therefore reverse the trial court's orders granting Montage's motion for summary judgment and denying Brown's motion for summary adjudication.

14

## III.

## DISPOSITION

The judgment granted to Montage is reversed.  The trial court is directed to enter a new order denying Montage's motion for summary judgment and granting Brown's motion for summary adjudication.  Brown is awarded costs on appeal.

CERTIFIED FOR PUBLICATION

<u>RAPHAEL</u>
                   J.

We concur:

<u>MILLER</u>
  Acting P. J.

<u>MENETREZ</u>
    J.